SAMPLE & MULHERRIN ⟩
    v. ⟩ CHANCERY.
ANDREW BELL. ⟩

WHITE, J., delivered the following statement of the case, and resolution of the court;—

It appears that John Caffry administered upon the estate of Benjamin Knox, deceased, and that the complainants were his securities. At April term 1806 a settlement was made by the administrator with the county court of Davidson, when a balance of $145, seemed to be due from him to the estate. At the same term Caffry was appointed guardian to John Knox, one of the minor children of the deceased, and commissioners were appointed to divide the estate among the distributees. There being a widow and ten children, and a principal part of the property being negroes, the share of each was estimated at $296, and one or more negroes assigned to each distributee at given prices, in consequence of which the

negroes given to some of them were of more, and some of them of less value, than the sums due.

The defendant intermarried with the widow of the deceased, and is now guardian to six of the children.

Some time after the distribution Caffry removed to Natchez. Bell, who resided in Kentucky, came to Tennessee for the purpose of inquiring into the situation of the estate, and he and the complainants went to the clerk's office, examined the records, and endeavored to come to some settlement, which they could not effect. One of the complainants then applied to Felix Grundy, Esq. to aid in making the settlement. He went to the office, and the parties seeming to take it for granted that they were answerable for the sums which appeared from the records due the distributees, respectively, procured the counsel to make the necessary calculations to show the amount. The share of John Knox was deducted from the whole amount, and what had been previously paid to each of the others was also deducted. Upon the balance, interest was calculated, and for the amount thus ascertained the complainants gave Bell their bond, who gave them a bond of indemnity against all the distributees but John Knox. The complainants were desirous that time should be allowed them to writ to Caffry and ascertain whether he had made any payments, and what was the situation of the business before they would close any settlement, or give their obligation; but the defendant threatened an immediate suit if the bond was not given, alleging that he could recover much more than he offered to take if he was compelled to sue, and alleging also, that delay would be useless, as no payment had ever been made to him by Caffry.

**67**

A judgment having been recovered on this bond, the complainants now come into equity, on the ground that prior to giving the bond, Caffry had actually paid everything which as administrator he was bound to pay, and that by the imposition of the defendant, they were induced to execute the bond.

The defendant, in his answer, relies upon the settlement; insists that he was a loser by it, and admits that he received of Caffry, before the execution of the bond, $148. It appears clearly by the proof that the amount of the widows share, which was due, was included in the bond, as well as the amount coming to the children; but the payment made to the defendant was before he was appointed guardian.

(1) Upon these facts, it was on the part of the complainants urged that they were entitled to relief, as they had been hurried into a settlement, and, upon misrepresentation, induced to give the bond, which was for $145, when not one cent was coming from them, nor could have been recovered upon the suit threatened.

On the other side it was insisted that there could be no doubt but that the complainants had made a favorable settlement; but that if they had not, it was still made fairly, when the complainants had the aid of counsel, and could not now be opened; and even if it were opened, the children were certainly entitled from the complainants to their proportion of the $145, found in the hands of the administrator, and that the defendant having received the whole of the sum at a time when he was not guardian, could not now prejudice their claim.

(2) Upon the question whether this settlement ought to be set aside, no man, who had heard and will credit the testimony and will compare it with the answer of the

68

defendant, can doubt. The widows share constitutes a part of this bond; the defendant admits he had received on account of his wife's share $148, and take from $145, due from Caffry, the administrator, the son of John Knox, which was one-eleventh, and there was in his hands due to the widow and the other nine children only about the sum of $132. Before the time of giving the bond, Caffry had actually paid the whole sum which was in his hands to the defendant, and yet he asserted to the complainants that nothing had been paid by Caffry. This then, is the plain case of a settlement made under a clear mistake, produced by misrepresentation. and no man ought, upon equitable principles, to be concluded by it. We are not embarrassed with the question whether a man can be relieved upon the ground of a mistake in point of law; nor are we embarrassed with questions relative to awards. This settlement was procured by misrepresenting a fact which the opposite party had no opportunity of knowing—and in a case where time to inquire into it was not taken upon the ground that the representation was the truth. When a settlement is once opened upon a clear point, the court are safe in looking into the whole settlement, and whenever a mistake is discovered, either in point of law or fact, it ought to be corrected.

It has been insisted that Bell, at the time he received the money, was not guardian, and had no authority to receive any thing but his wife's share; and that as he is now guardian to six of the children, he ought at least to recover their proportion of the $145. In this court it is not conceived to be the least material whether the money was received before or after his appointment as guardian—he is now guardian, and the money which be-

longs to his ward is in his hands. What objection, therefore, can there be to consider their proportion in his hand as guardian from the time of his appointment? If we now permit him to receive this money on the ground contended for, we ought immediately, to decree it to be returned to Caffry, or the complainants. As the money which ought to have been paid by Caffry, as administrator, has in fact been paid by him to the man who is now guardian, to avoid circuity of action, let it be considered in his hands, as guardian, to the extent of the shares of his wards, and the complainants to be exonerated from the payment of the sum now claimed on that account. The sum could never have been legally claimed of Caffry as administrator, nor from the complainants as his securities. The sums due from one legatee to another, in consequence of the impractibility of equally dividing the estate, cannot be charged to the administrator, but to those who are indebted as having received the largest dividend; particularly when it is recollected that the division was by order of the court, in which the children have acquired, personally, or by their guardians, by receiving the portions allotted them.

The injunction ought to be made perpetual, and the bond of indemnity, executed by Bell, cancelled.

TRIMBLE, for the complainants.

HAYES, for the defendant.